# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

DR. HUGO AUDBERTO ÁLVAREZ,

      Plaintiff,

      v.

HOSPITAL EPISCOPAL SAN LUCAS, INC., <u>et al.</u>,

      Defendants.

CIVIL NO. 15-2413 (PAD)

## OPINION AND ORDER

Delgado-Hernández, District Judge.

      Dr. Hugo Audberto Álvarez sued Hospital Episcopal San Lucas, Inc. ("HESLI") and others,[1] seeking injunctive relief and damages following his dismissal from an emergency medicine residency program after he stated that if the chief resident –his immediate superior in the program– had been a man, he would have punched her in the face for having interrupted him during a patient presentation and saying plaintiff was presenting a patient incorrectly (Docket No. 1).[2]  Defendants answered the complaint denying liability (Docket Nos. 8 and 9) and upon conclusion of discovery, moved for summary judgment (Docket Nos. 77, 79, 85).  Plaintiff opposed motions (Docket Nos. 99, 104, 106).[3]  Defendants replied (Docket Nos. 110, 118, 126).  On May 31, 2016, the court denied plaintiff's request for a temporary restraining order and preliminary injunction (Docket No. 19), and

---

[1] Dr. Yorlene Hevia, Dr. Carlos García, Dr. William Santiago, Dr. Hiram Soler, Dr. Vivian Pérez, Dr. Luisa Alvarado, Dr. Jesús Cruz, Dr. Joaquín Laboy, Dr. María Valentín, Dr. Héctor Silva, and Dr. Lissandra Colón.

[2] Although the caption of the complaint refers to "Dr. Hugo Audberto Alvarez and the Conjugal Partnership constituted by him and his wife," the complaint fails to plead any claims by the wife or conjugal partnership.  Therefore, the court treats Dr. Alvarez as the only claimant.

[3] Three separate motions for summary judgment were filed, one by HESLI (Docket No. 77), one by Dr. Hevia (Docket No. 79), and one by the remaining co-defendants (Docket No. 85)

on September 30, 2018, granted defendants' motions for summary judgment (Docket No. 131).

Following are the grounds for the summary judgment rulings.

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is need for trial. See, Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)(applying formulation). To this end, a factual dispute is "genuine" if it could be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). It is "material" if it potentially affects the outcome of the case in light of applicable law. Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. See, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(discussing issue). All reasonable factual inferences must be drawn in favor of the party against whom summary judgment is sought. See, Shafmaster v. U.S., 707 F.3d 130, 135 (1st Cir. 2013)(so noting). Conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative will not suffice to ward off a properly supported summary judgment motion. See, Nieves-Romero v. U.S., 715 F.3d 375, 378 (1st Cir. 2013)(citing Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir.2001))(internal quotation marks omitted). Based on these parameters, careful record review shows absence of genuine factual dispute as to the facts identified in the section that follows.

# II. OMNIBUS FINDINGS OF FACTS[4]

## A. Plaintiff's Residency

From 2012 to 2014, plaintiff was a resident in emergency medicine in Hospital Episcopal San Lucas Ponce, property of St. Luke's Memorial Hospital. See, "Statement of Uncontested Material Facts in Support of Co-Defendants' Motion for Summary Judgment" (Docket No. 86), ¶ 80.[5] St. Luke's does business as Hospital Episcopal San Lucas Ponce. See, Co-Defendants'

---

[4] Except otherwise noted, the facts included in this section are drawn from the well-pleaded facts asserted in the complaint (Docket No. 1) and the parties' Local Rule 56 submissions (Docket Nos. 78, 80, 86, 97, 103, 105). Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by specific citations to the record, that the movant contends are uncontested and material. Local Rule 56(b) and (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. Id. 56(c) and (e). If a party improperly controverts the facts, the court may treat those facts as uncontroverted. Natal Perez v. Oriental Bank & Tr., 291 F.Supp.3d 215, 219 (D.P.R. 2018). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. Id. 56(c). While the district court may "forgive" a violation of Local Rule 56, litigants who ignore the rule do so "at their peril." Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 219 (1st Cir. 2007). Although the court reviewed every statement submitted by the parties, it will only consider and include in this Opinion and Order those facts that are material for purposes of summary judgment as mandated by Fed. R. Civ. P. 56.

[5] Plaintiff denies this statement, claiming that HESLI does business as Hospital Episcopal San Lucas Ponce and/or Hospital Episcopal San Lucas. See, "Plaintiffs' Statement of Contested Material Facts Regarding Defendants' Statement Filed at Docket 86; and Separate Statement of Uncontested Material Facts" ("SCMF 2")(Docket No. 103), ¶ 79 (responding to Co-Defendants' SUMF (Docket No. 86) ¶ 80). However, the denial is unsupported by the record referred, to wit, Dr. García Gubern's deposition testimony, in which he states that he "established the Emergency Medicine Residence Program for Hospital Episcopal San Lucas," a statement which is cited out of context, has no bearing on whether plaintiff served as resident for another hospital. See, Docket No. 97-2, p. 14, lines 2-4. In addition, plaintiff directs the court's attention to another excerpt of the same deposition, in which Dr. García Gubern was asked whether an unknown letter (marked as deposition exhibit 26) includes the word "Memorial," which he answers in the negative (Id.; Docket No. 97-2, pp. 9-10), and to the termination letter, dated October 15, 2014 (Docket No. 78-6), where "at the letter head and below the signature of García Gubern [it] states HESL not [Saint Luke's]." See, SCMF ¶¶ 15-17. Likewise, he mentions Dr. Alvarado's deposition testimony, where she was asked to read an unknown certificate and she answered "Hospital Episcopal San Lucas." Id.; Docket No. 97-3, p. 2. And he alludes to a certificate of incorporation from 2000 and articles of incorporation from 1999, which merely reflect that HESLI underwent a corporate name change on June 14, 1999, from "Hospital Episcopal San Lucas Ponce, Inc." to "Hospital Episcopal San Lucas, Inc.," or HESLI, and that its stated business purpose is to establish healthcare institutions and conduct educational activities related healthcare, among others. See, SCMF (Docket No. 97) ¶¶ 15-17; Docket No. 97-4, pp. 2, 4. But this has no bearing on whether HESLI owns or operates Hospital Episcopal San Lucas Ponce, Saint Luke's, or any hospitals at all, much less a residency program or programs. As for the deponent's testimony –which is used to imply that HESLI is a proper defendant– plaintiff failed to demonstrate the deponent's personal knowledge about these entities' corporate organization, a fatal obstacle to admissibility under Fed. R. Civ. P. 56. See, RWM Consultants, Inc. v. Centro de Gestión Única del Suroeste, 491 F.Supp.2d 245, 253 (D.P.R. 2007)("it is axiomatic that

SUMF (Docket No. 86), ¶ 80.[6]  Plaintiff participated in the residency through successive one-year contracts that he executed with the Puerto Rico Department of Health in 2012, 2013 and 2014. See, HELSI's "Statement of Uncontested Facts in Support of HELSI's Motion for Summary Judgment" (Docket No. 78), ¶ 1; "Plaintiffs' Statement of Contested Material Facts" ("SCMF") (Docket No. 97), ¶¶ 1, 6, 9.  He was dismissed from the residency in 2014.  See, "Statement of Uncontested Material Facts in Support of Dr. Yorlenis Hevia's Motion for Summary Judgment" (Docket No. 80), ¶ 25; Docket No. 80-9, p. 1.  Plaintiff sued HESLI, albeit HESLI did not own or operate a hospital or residency programs.  See, "Statement of Uncontested Material Facts in Support of HESLI's Motion for Summary Judgment" ("HESLI's SUMF")(Docket No. 78), ¶¶ 18-20; Docket Nos. 78-8, pp. 10-11; 78-9.[7]

## B.  Residency Contracts

The 2012 Contract expresses plaintiff was to provide services as a resident in Hospital Episcopal San Lucas Ponce, property of Saint Luke's Memorial Hospital.  See, HELSI's SUMF ¶ (Docket No. 78) ¶ 2; Docket No. 78-2, p. 1.[8]  In exchange for plaintiff's medical services, the

---

any testimony used in a motion for summary judgment setting must be admissible in evidence, i.e., based on personal knowledge and otherwise not contravening evidentiary principles")

[6] Plaintiff denies this statement, claiming again that HESLI does business as Hospital Episcopal San Lucas Ponce and/or Hospital Episcopal San Lucas. See, SCMF 2 (Docket No. 103), ¶ 79 (responding to Co-Defendants' SUMF (Docket No. 86) ¶ 80).  In his opposing statement, plaintiff essentially relies on the same evidence mentioned in supra, note 5.  Thus, for the same reasons mentioned therein above, the opposing statement is disregarded, and the fact admitted as stated.  See, supra, note 5.

[7] Plaintiff denies these statements, claiming that HESLI is a corporation that does business as Hospital Episcopal San Lucas Ponce and/or Hospital Episcopal San Lucas.  See, SCMF (Docket No. 97) ¶¶ 15-17 (responding to HESLI's SUMF (Docket No. 78) ¶¶ 18-20).  In his opposing statement, plaintiff essentially relies on the same evidence mentioned in supra, note 5. Thus, for the same reasons mentioned therein above, the opposing statement is disregarded, and the fact admitted as stated.  See, supra, note 5.

[8] Plaintiff admits that he was to provide services as a resident, but disputes that it was in Hospital Episcopal San Lucas Ponce.  See, SCMF (Docket No. 97) ¶ 2.  He states that the residency program belonged to another purported entity, Hospital Episcopal San Lucas.  Id.  He relies on the deposition testimony of Dr. Carlos García Gubern and the "Hospital San Lucas-Ponce School of Medicine Consortium General Rules."  Dr. García testified that he "established

Puerto Rico Department of Health paid him a monthly salary. See, HESLI's SUMF (Docket No. 78) ¶ 4.[9] Similarly, the 2013 Contract states that plaintiff was to provide services as a resident in Hospital Episcopal San Lucas Ponce, property of Saint Luke's Memorial Hospital. See, HESLI's SUMF (Docket No. 78) ¶ 10; Docket No. 78-3, p. 1.[10] Like under the 2012 Contract, the Puerto Rico Department of Health would pay plaintiff a monthly salary in exchange for his services. See, HESLI's SUMF (Docket No. 78) ¶ 9.[11] The 2014 Contract, between plaintiff and the Puerto Rico Department of Health, provides that plaintiff was to serve as a resident in Hospital Episcopal San Lucas Ponce, property of Saint Luke's Memorial Hospital (HESLI's SUMF (Docket No. 78) ¶ 12;

---

the Emergency Medicine Residence Program for Hospital Episcopal San Lucas." The testimony does not contradict the terms of the 2012 Contract. See, Docket No. 97-2, p. 14, lines 2-4. The General Rules state that "[r]esidents are contracted by the Department of Health of Puerto Rico to train at Hospital Episcopal San Lucas Residency Programs and its affiliated institutions." See, Docket No. 97-8, p. 2. This is not contrary to plaintiff's having been a resident in Hospital Episcopal San Lucas Ponce. Plaintiff denies that Hospital Episcopal San Lucas and Hospital Episcopal San Lucas Ponce are owned by Saint Luke's, "because [at] the very top of the heading of the alleged letters of dismissal and/or suspension of the hospital, it did not state Saint Luke's Memorial Hospital, Inc.; and the Emergency Medicine Program was of the Hospital Episcopal San Lucas." See, SCMF (Docket No. 97) ¶ 2. The argument does not change plaintiff's provision of services as a resident in Hospital Episcopal San Lucas Ponce, property of Saint Luke's Memorial Hospital as pointed out in HESLI's SUMF (Docket No. 78).

[9] Plaintiff objects to this statement (without admitting, denying, or qualifying the statement) on grounds that it does not comply with Local Rule 56 because it does not include a specific citation to a page in the record. See, SCMF (Docket No. 97) ¶ 4. But the statement refers to and is supported by the 2012 Contract. See, Docket No. 78-2, pp. 3-4.

[10] Plaintiff admits that he was to provide services as a resident, but disputes that it was in Hospital Episcopal San Lucas Ponce. As support, he refers to Dr. García Gubern's deposition excerpt (Docket No. 97-2, p. 14, lines 2-4), and the "Hospital San Lucas-Ponce School of Medicine Consortium General Rules" (Docket No. 97-8, p. 2). See, SCMF (Docket No. 97) ¶ 7 (responding to HESLI's SUMF (Docket No. 78) ¶ 10). The materials plaintiff relies on do not dispute the text of the 2013 Contract.

[11] Plaintiff lodges the same objection to this statement (without admitting, denying, or qualifying the statement) for the supposed failure to comply with Local Rule 56 because it does not include a specific citation to a page in the record. See, SCMF (Docket No. 97) ¶ 6 (responding to HESLI's SUMF (Docket No. 78) ¶ 9). The statement refers to and is supported by the 2013 Contract. See, Docket No. 78-3, pp. 1-2.

Docket No. 78-4, p. 1),[12] and that the Puerto Rico Department of Health would pay him a monthly salary in exchange for his services. See, HESLI's SUMF (Docket No. 78) ¶ 13.[13]

### C. Rules and Regulations

The 2014 Contract states that plaintiff could be dismissed after a hearing provided for in the rules and regulations, if he incurred in improper conduct, if his professional execution violated rules and regulations or if his academic progress or academic skills were deficient. See, Co-Defendants' SUMF (Docket No. 86) ¶ 8.[14] Plaintiff received a copy of the resident's manual; which includes the rules and regulations. See, Co-Defendants' SUMF (Docket No. 86) ¶¶ 10, 11; SCMF 2 (Docket No. 103) ¶ 10.[15]

In their operation, the rules and regulations recognize various grounds for non-renewal or dismissal, including conduct deemed grossly unprofessional, incompetent, erratic, potentially criminal; and conduct threatening to the well-being of patients, other residents, faculty, staff, or the resident. See, Docket No. 86-5, p. 10. To channel adverse actions, they express that when the

---

[12] As with the 2012 Contract and the 2013 Contract, plaintiff admits that he was to provide services as a resident, but disputes that it was in Hospital Episcopal San Lucas Ponce, referring to the same evidence at Docket No. 97-2, p. 14, lines 2-4, and Docket No. 97-8, p. 2. See, SCMF (Docket No. 97) ¶ 9 (responding to HESLI's SUMF (Docket No. 78) ¶ 12). This evidence does not dispute the text of the 2014 Contract. See, supra, note 8.

[13] Plaintiff reiterates his objection (without admitting, denying, or qualifying) based on the supposed Local Rule 56 violation for failure to include a specific citation to a page in the record. See, SCMF (Docket No. 97) ¶ 10 (responding to HESLI's SUMF (Docket No. 78) ¶ 13). The statement, however, refers to and is supported by the 2014 Contract. See, Docket No. 86-4, p. 9.

[14] Plaintiff objects to this statement (without admitting, denying, or qualifying it) based on what he views as a Local Rule 56 violation for failure to include a specific citation to a page in the record. See, SCMF 2 (Docket No. 103) ¶ 8. But the statement refers to and is supported by the 2014 Contract. See, Docket No. 78-4, p. 4.

[15] Plaintiff objects to ¶ 10 stating that he was given a manual at some point in the residency, not when he began working, and to ¶ 11 (without admitting, denying, or qualifying) based on the argument that Local Rule 56 was violated for failure to include a specific citation to a page in the record. See, SCMF 2 (Docket No. 103) ¶ 11. The objection to ¶ 10 does not create a genuine issue to what is stated in the text, and ¶ 11 refers to and is supported by the "Hospital Episcopal San Lucas Ponce & Ponce School of Medicine and Health Sciences Consortium Resident's Manual 2014-2015", which includes the "General Rules and Regulations." See, Docket No. 86-5.

Graduate Medical Education Director, Program Director or member of the Teaching Staff identifies a reason for adverse action against a resident –including remediation, probation, non-promotion to next level of training, non-renewal of residency appointment, and automatic dismissal– a written note must be sent to the Evaluation and Promotion Committee for evaluation and recommendation.  See, Co-Defendants' SUMF (Docket No. 86) ¶ 15; Docket No. 86-5, p. 11.[16]  In the event of a recommendation adverse to the resident, the Program Director informs the resident in writing, stating the decision, its reason, and the resident's right to appeal.  See, Docket No. 86-5, p. 11.

Should the resident appeal, the Program Director submits the appeal to the Evaluation and Promotion Committee or to an Ad-Hoc Committee, which may order a hearing.  See, Docket No. 86-5, p. 11.  Thereafter, the Committee submits a recommendation to the Program Director, who in turn prepares a report with the decision and notifies the report to the resident and the General Medical Education Committee.  See, Co-Defendants' SUMF (Docket No. 86) ¶¶ 16-17; Docket No. 86-5, p. 12.[17]  The resident may appeal this decision to the Graduate Medical Education Committee by requesting a formal hearing, and after the hearing and an evaluation of the case, that Committee submits its final decision to the resident and Program Director.  See, Co-Defendants' SUMF (Docket No. 86) ¶¶ 18-19; Docket No. 86-5, p 12.[18]  The Program Director may

---

[16] Plaintiff repeats the objection (without admitting, denying, or qualifying) that Local Rule 56 was violated for failure to include a specific citation to a page in the record.  See, SCMF 2 (Docket No. 103) ¶ 15.  The statement, however, refers to and is supported by the general rules and regulations.  See, Docket No. 86-5, pp. 8-13.

[17] Plaintiff repeats the objection (without admitting, denying, or qualifying) that Local Rule 56 was violated for failure to include a specific citation to a page in the record.  See, SCMF 2 (Docket No. 103) ¶¶ 16-17.  The statement refers to and is supported by the general rules and regulations.  See, Docket No. 86-5, p. 12.

[18] Plaintiff repeats the objection (without admitting, denying, or qualifying) that Local Rule 56 was violated for failure to include a specific citation to a page in the record.  See, SCMF 2 (Docket No. 103) ¶¶ 18-19. The statement refers to and is supported by the general rules and regulations.  See, Docket No. 86-5, p. 12.

immediately suspend the resident in case his professional behavior adversely affects the health or safety of the patients under his care or places anyone at a security risk. See, Co-Defendants' SUMF (Docket No. 86) ¶ 20; Docket No. 86-5, p. 12.[19] Furthermore, automatic dismissal is justified in response to misconduct, examples of which include disorderly conduct, harassment of other employees, use of abusive language on the premises (hospital or affiliated sites), fighting, threatening, attempting or causing injury to another person on the premises. See, Docket No. 86-5, pp. 10-11. In case of immediate suspension, the resident is entitled to due process. See, Docket No. 86-5, p.12.

### D. Incident with Dr. Hevia

Dr. Yorlene Hevia was an emergency medicine resident at Hospital Episcopal San Lucas Ponce. See, Dr. Hevia's SUMF (Docket No. 80), ¶¶ 3-4; "Plaintiff's Position as to Dr. Yorlenis Hevia's Statement of Uncontested Material Facts and the Plaintiff's Statement of Uncontested Material Facts" ("SCMF 3")(Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF 80), ¶¶ 3-4).[20] She started her training along with plaintiff in 2012. See, Dr. Hevia's SUMF (Docket No. 80), ¶¶ 3-4. By October 2014, she was chief resident of the emergency medicine residency program, and plaintiff's superior. See, Dr. Hevia's SUMF (Docket No. 80) ¶ 8; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶ 8)).

---

[19] Plaintiff repeats the objection (without admitting, denying, or qualifying) that Local Rule 56 was violated for failure to include a specific citation to a page in the record. See, SCMF 2 (Docket No. 103) ¶ 20. The statement refers to and is supported by the general rules and regulations. See, Docket No. 86-5, p. 12.

[20] Contrary to plaintiff's previous assertions that he did not work for Hospital Episcopal San Lucas Ponce, but rather for HESLI, in this instance he admits that he started work for Hospital Episcopal San Lucas Ponce in 2012, in the same class as Dr. Hevia. See, Dr. Hevia's SUMF (Docket No. 80) ¶¶ 3-6; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶¶ 3-8).

On October 7, 2014, while plaintiff was presenting a patient to an internal medicine resident, Dr. Hevia raised her voice and interrupted him, telling plaintiff that he was presenting the patient incorrectly, and the patient needed emergency dialysis treatment. See, Dr. Hevia's SUMF (Docket No. 80) ¶¶ 9-11; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶¶ 10-11)).[21] After this incident, plaintiff spoke to Dr. Eric López, and told him that if Dr. Hevia had been a man, he would have punched her in the face. See, Dr. Hevia's SUMF (Docket No. 80) ¶ 13; Docket No. 80-1, pp. 16-17.[22]

On or around October 7, 2014, Dr. López reported plaintiff's remarks to the emergency medicine residency program director, Dr. García Gubern, who in turn requested that he submit a written report regarding the incident. See, Dr. Hevia's SUMF (Docket No. 80) ¶¶ 17-18; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶¶ 17-18); Docket No. 80-7, p. 3.[23] On October 11, 2014, Dr. López prepared a report documenting plaintiff's comments, which report

---

[21] Plaintiff denies in part Dr. Hevia's SUMF (Docket No. 80) ¶ 9, characterizing it as incomplete and misleading. See, SCMF 3 (Docket No. 105) ¶ 2. Citing to his own deposition testimony, he adds that Dr. Hevia's remarks were made in an "aggressive manner." Id. When he was asked during the deposition about the allegation in the complaint regarding Dr. Hevia's "aggressive manner" of interrupting him, plaintiff stated that he agreed with the "sentiment" of that allegation, further stating that she only "raised [her] voice and implied that I was wrong." See, Docket No. 80-1, p. 15. In the end, plaintiff's opposing statement amounts to unsupported argumentation, mischaracterizing evidence. See, Roggio v. City of Gardner, 2013 WL 1947033, *4 (D. Mass. May 9, 2013)("As a general matter, factual statements in briefs that are made . . . with reference to evidence that is in some way mischaracterized need not be considered at all, or may be treated as mere argument.").

[22] Plaintiff denies in part Dr. Hevia's SUMF (Docket No. 80) ¶ 13, characterizing it as incomplete and misleading, but his opposing statement is argumentative, and even admits that he uttered the referred statement concerning Dr. Hevia. See, SCMF 3 (Docket No. 105) ¶ 3.

[23] Dr. Hevia came to learn of plaintiff's remarks from Dr. Lissandra Colón, after which she felt threatened because she believed plaintiff had been verbally aggressive towards other female residents on prior occasions and could thus act on his words, and accordingly informed Dr. Colón that she was concerned. See, Dr. Hevia's SUMF (Docket No. 80) ¶¶ 22-24; SCMF 3 (Docket No. 105), p. 1(admitting Dr. Hevia's SUMF ¶ 22). But plaintiff denies in part Dr. Hevia's SUMF (Docket No. 80) ¶ 23 and denies ¶ 24 as in his view they are incomplete, misleading, and hearsay. In doing so, however, he admits "Dr. Hevia said she felt concerned and threatened due to alleged prior plaintiff's conduct towards other female colleagues," and only appears to object on grounds that she did not prepare any written statements regarding the October 7, 2014 incident and plaintiff's previous conduct with other residents. See, SCMF 3 (Docket No. 105) ¶¶ 9-10. Plaintiff's contentions in opposition are argumentative, and thus disregarded.

Dr. García Gubern received. See, Dr. Hevia's SUMF (Docket No. 80) ¶¶ 19, 21; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶ 21).[24]

### E. Termination

In the days after receiving Dr. López's account, Dr. García Gubern sought a recommendation from the Clinical Competency Committee. See, Docket 80-7, p. 6. Upon review of plaintiff's residency file (Docket 80-7, p. 6), the Committee recommended that plaintiff be terminated from the program. See, Docket No. 80-9, p.1. On October 15, 2014, Dr. García Gubern notified plaintiff that he was terminated from the residency program because of his "disorderly, harassing behavior and abusive language." See, Dr. Hevia's SUMF (Docket No. 80) ¶ 25; Docket No. 80-9, p. 1.[25]

On October 28, plaintiff wrote Dr. García Gubern a letter appealing the decision. See, Docket No. 80-1, pp. 21-22. On November 3, 2014, a hearing was held before an Ad Hoc Committee. See, Docket No. 80-1, p. 23.[26] During the hearing, plaintiff was asked about the

---

[24] Plaintiff denies in part Dr. Hevia's SUMF (Docket No. 80) ¶ 19, describing it as incomplete and out of context. The opposing statement is argumentative, and as such, disregarded. See, SCMF 3 (Docket No. 105) ¶ 19.

[25] There is a genuine dispute as to whether plaintiff was being "dismissed" or "suspended immediately" through the October 15, 2014 letter. Plaintiff contends that he was only being "suspended," whereas defendants contend he was being "dismissed." See, Dr. Hevia's SUMF (Docket No. 80) ¶¶ 25; SCMF 3 (Docket No. 105) ¶11. The letter states "Based on the Rules established in the resident's Institutional Handbook with respect to disorderly, harassing behavior and abusive language, the Committee has recommended and I accept the decision of immediate suspension (automatic) from the Emergency Medicine training program. . . . You have the right to an appeal according to the 'Due Process' described in your Residents Handbook." See, Docket No. 80-9, p. 1. There also appears to be a genuine controversy on whether plaintiff was on probation as of the letter's date. See, Co-Defendants' SUMF (Docket No. 86) ¶¶ 21-34; SCMF 2 (Docket No. 103) ¶¶ 21-34. The benefit of the doubt is resolved in plaintiff's favor. Still, whether the October 15th letter "suspended" or "dismissed" plaintiff, or he was on probation is inconsequential in light of subsequent events.

[26] The doctors that presided the Ad Hoc Committee were Dr. William Santiago, Dr. Colón, Dr. Hiram Soler, and Dr. Vivian Pérez. See, Dr. Hevia's SUMF (Docket No. 80) ¶ 28; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF (Docket No. 80) ¶ 28). Dr. Hevia was not present at the hearing. See, Dr. Hevia's SUMF (Docket No. 80) ¶ 29; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶ 29).

incident with Dr. Hevia and was allowed to state his position.  See, Dr. Hevia's SUMF (Docket No. 80) ¶¶ 26-27; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶¶ 26-27); Co-Defendants' SUMF (Docket No. 86) ¶¶ 65-66.[27]  On November 6, 2014, the Ad Hoc Committee notified Dr. García Gubern that it decided to uphold the "suspension," and recommended not accepting plaintiff back into the residency program.  See, Co-Defendants' SUMF (Docket No. 86) ¶ 68; Docket No. 86-19, p. 1.[28]  On November 10, 2014, Dr. García Gubern notified plaintiff that the Ad Hoc Committee had affirmed the decision to "dismiss" him.  See, Dr. Hevia's SUMF (Docket No. 80) ¶ 30; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶ 30).[29]

On November 11, 2014, plaintiff appealed to the Graduate Medical Education Committee the Ad Hoc Committee's and Dr. García Gubern's decision to "automatically dismiss" him.  See, Dr. Hevia's SUMF (Docket No. 80) ¶ 31; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's

---

[27] Plaintiff responds with non-responsive argumentation.  See, SCMF 2 (Docket No. 103) ¶¶ 64-65 (responding to Co-Defendants' SUMF (Docket No. 86) ¶¶ 65-66).  Nevertheless, the evidence referred to by defendants, to wit, plaintiff's own deposition testimony, supports the statements.  See, Docket No. 86-1, pp. 42-45.

[28] Plaintiff denies the statement, stating only that he admits the Ad Hoc Committee decided to uphold the "suspension," and refers to the same letter at Docket No. 86-19, p. 1.  See, SCMF 2 (Docket No. 103) ¶ 67 (responding to Co-Defendants' SUMF (Docket No. 86) ¶ 68).  However, he did not respond to the fact that the Committee recommended not accepting him back into the residency program.

[29] Here, plaintiff concedes that he was "dismissed" from the residency, at least via the November 10, 2014 letter.  But out of an abundance of caution, the court also looks at Co-Defendants' SUMF (Docket No. 86) ¶ 69, which essentially reiterates Dr. Hevia's SUMF (Docket No. 80) ¶ 30, which plaintiff denied.  See, SCMF 2 (Docket No. 103) ¶ 68 (responding to Co-Defendants' SUMF (Docket No. 86) ¶ 69).  However, the opposing statement merely refers to SCMF 2 (Docket No. 103) ¶ 67 for support, and as discussed above, it only serves to vaguely deny the statement and admit that the Ad Hoc Committee upheld the "suspension" as per the November 6, 2014 letter by the Ad Hoc Committee to Dr. García Gubern (Docket No. 86-19, p. 1).  More important, Co-Defendants' SUMF (Docket No. 86) ¶ 69 refers to, among other things, the November 10, 2014 letter by Dr. García Gubern to plaintiff, which states, as relevant, "In response to the 'Due Process' of academic appeal that you requested, the 'Ad-Hoc' Committee appointed to evaluate your case upheld the decision recommended by the Program's Clinical Competency Committee that had been accepted by me as Program Director and notified to you via letter of 'Automatic Dismissal' on October 15, 2014. . . . I hereby notify you the reaffirmation of the decision and I remind you that according to the rules established in the Resident's Handbook, you have the right to appeal this decision before the Graduate Medical Education Committee under the direction of Dr. Luisa I. Alvarado."  See, Docket No. 86-20, p. 1 (emphasis in the original).

SUMF ¶ 31).[30]   On November 14, 2014, the Graduate Medical Education Committee held a hearing.   See, Co-Defendants' SUMF (Docket No. 86) ¶ 72; SCMF 2 (Docket No. 103) ¶ 71 (admitting Co-Defendants' SUMF ¶ 72);[31] Dr. Hevia's SUMF (Docket No. 80) ¶ 32; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶ 32).[32]   On November 21, 2014, Dr. Luisa Alvarado and Dr. Jesús Cruz notified plaintiff that the Committee had confirmed the automatic dismissal.   See, Dr. Hevia's SUMF (Docket No. 80) ¶ 35; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶ 35).[33]

---

[30] In his email, plaintiff states "I would like to appeal this adverse decision and request my due process for the letter of *automatic dismissal* I received." See, Docket No. 86-21 (emphasis added); Co-Defendants' SUMF (Docket No. 86) ¶ 70.  Plaintiff denies that he appealed an "automatic dismissal," but was rather a "suspension," according to the October 15, 2014 letter. See, SCMF 2 (Docket No. 103) ¶ 69 (responding to Co-Defendants' SUMF (Docket No. 86) ¶ 70).  Even so, his opposing statement is argumentative and inconsistent with facts already admitted.

[31] It is not clear whether plaintiff was present at the November 14, 2014 hearing, as he testified at deposition, somewhat evasively, that he believed he was present, although he could not remember precisely. See, Docket No. 86-1, pp. 49-51.  Notwithstanding, there is no question that the hearing was scheduled –as plaintiff admitted in SCMF 2 (Docket No. 103) ¶ 71–and that he was notified and the hearing held. See, Docket No. 86-6, pp. 1-2 (Dr. Alvarado's Statement Under Penalty of Perjury); Docket No. 86-1, p. 166 ("Q. So you appeared because you received the notice. A. I believe I was informed of the date. I don't know if I got it through this letter or e-mail or what, *but I was informed* and appealed-- and I appeared somewhere")(emphasis added).

[32] The doctors that presided the Graduate Medical Education Committee were Dr. Cruz, Dr. Valentín, Dr. Rivera-Pedrogo, Dr. Silva, and Dr. Laboy. See, Dr. Hevia's SUMF (Docket No. 80) ¶ 33; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶ 33).  Dr. Hevia was not present at the hearing. See, Dr. Hevia's SUMF (Docket No. 80) ¶ 34; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶ 34).

[33] The letter states "Dear Dr. Alvarez, This is to notify you of the Graduate Medical Education Ad Hoc Committee convened on November 19 to address your appeal of the decision of suspension (automatic dismissal) from the Emergency Medicine Program . . . . The members of the Ad Hoc Committee met to listen to you at a hearing and to examine in detail all of the evidence relative to your suspension.  After careful analysis and ample discussion, the members of the Graduate Medical Education Ad Hoc Committee unanimously decided to uphold the decision of suspension from the Emergency Medicine Program." See, Docket No. 86-24, p. 1; Co-Defendants' SUMF (Docket No. 86) ¶ 79.  Plaintiff denies that the challenged adverse decision was an "automatic dismissal," but rather a "suspension," as per the terms of the October 15, 2014 letter. See, SCMF 2 (Docket No. 103) ¶ 78 (responding to Co-Defendants' SUMF (Docket No. 86) ¶ 79).  But the opposing statement is argumentative and inconsistent with facts already admitted.  Plaintiff appealed a "suspension (automatic dismissal)," which the Committee upheld.

# **DISCUSSION**

## **A. Tort Claims**

Plaintiff claims defendants are liable to him under Puerto Rico's general tort statute, Article 1802 of the Civil Code, P.R. Laws Ann. tit. 31 § 5141 (Docket No. 1, pp. 23-24). Article 1802 provides in part that "a person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." Id. To establish liability, the plaintiff must show: (i) a duty of care requiring defendant to conform to a certain standard of conduct towards him; (ii) breach of that duty; (iii) damages; and (iv) a causal connection between the breach and the damages. See, De-Jesús-Adorno v. Browning Ferris Industries of Puerto Rico, Inc., 160 F.3d 839, 842 (1st Cir. 1995)(so explaining). The record does not sustain liability in connection with Article 1802.

First, plaintiff alleges that HESLI was his employer at the time of his termination and, as a result, is liable under Article 1802 for his dismissal from the residency (Docket No. 1, p. 23; Docket No. 99, pp. 2, 16). HESLI did not own or operate a hospital or a residency program. See, HESLI's SUMF (Docket No. 78) ¶¶ 18-20; Docket Nos. 78-8, pp. 10-11; 78-9. And there is no indication or evidence that it owed plaintiff a duty of care, the breach of which caused damages sustaining liability here. On that basis, the Article 1802 claim against HESLI must be dismissed. See, Nieves v. Dymax, 952 F.Supp. 57, 65 (D.P.R. 1996)(dismissing tort action, for record was bereft of evidence that defendant breached a non-contractual duty to plaintiffs).

Second, plaintiff argues he has set forth a viable tort claim against Dr. Hevia because she interrupted him when he was presenting a patient, which led to his dismissal (Docket No. 104). Assuming Dr. Hevia's interruption in her role as chief resident constituted an actionable breach of duty towards him –a dubious proposition at best– there is no genuine issue of material fact as to

whether her actions were the adequate cause of plaintiff's termination –they were not– for it is undisputed that plaintiff was terminated from the residency program on account of what the decisionmakers characterized as "disorderly, harassing behavior and abusive language." See, Dr. Hevia's SUMF (Docket No. 80) ¶ 25; Docket No. 80-9, p. 1.

Plaintiff posits the statement that he would have punched Dr. Hevia in the face had she been a man occurred because Dr. Hevia interrupted and contradicted him in front of colleagues (Docket No. 104, p. 5). While plaintiff's argument may suggest that Dr. Hevia's actions were a *but for* cause of his termination, he has not set forth sufficient facts to establish that they amount to adequate cause. A legally sufficient causal relationship –adequate cause– is not established in Puerto Rico by an event in the absence of which a result such as an injury, would not have occurred. See, Cárdenas Maxán v. Rodríguez, 1990 WL 657519 (P,R.), P.R. Offic. Trans., 125 D.P.R. 702 (1990) (discussing topic). Rather, causality refers to an event that, in general experience, ordinarily can be expected to produce the result. See, Ganapolsky v. Boston Mut. Life Ins. Co., 138 F.3d 446, 447-448 (1st Cir. 1998)(so observing).[34]

In this light, plaintiff was required to show that the injury was reasonably foreseeable to establish liability. See, Vazquez-Filipetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007)(highlighting centrality of foreseeability to a successful tort claim). And the record does not support the conclusion that Dr. Hevia should have foreseen plaintiff's termination as a result of interrupting him when she stated that plaintiff was not presenting a patient correctly. Nothing reasonably alerted her *ex ante,* that plaintiff would make the comment, and the comment would

---

[34] The term "adequate cause" is similar to "proximate cause." See, Rodríguez v. Puerto Rico, 825 F.Supp.2d 341, 347 (D.P.R. 2011)(so noting)(citing Tokyo Marine and Fire Ins. Co., Ltd. v. Pérez &Cia. de Puerto Rico, Inc., 142 F.3d 1, 7 & n.5 (1st Cir. 1998)(referring to Puerto Rico decisions explaining adequate cause)).

result in his dismissal from the residency program. See, Ganapolsky, 138 F.3d at 447-448 (finding that accidental injury to plaintiff's left foot resulting from tripping on a two-inch step at entrance to men's room in a theater was not the adequate cause of an infection requiring foot's amputation, for the infection that led to the gangrene does not normally arise from tripping on a step). Thus, plaintiff's Article 1802 claim against Dr. Hevia must be dismissed.

Third, plaintiff maintains the physicians that participated in the process that led to his dismissal, breached a duty of care towards him (Docket No. 106, p. 35).[35] Basically, his argument centers on the contention that these co-defendants first referred to his termination as a "suspension," but later as a "dismissal" (Docket No. 1, p. 20-21; Docket No. 106, pp. 38-39). He reasons that, as a result of this mischaracterization, he did not have proper notice of his dismissal and was unjustly terminated from the residency program. (Docket No. 106, p. 39). In context, the argument lacks merit. It assumes there is a general duty to provide advance notice prior to implementing an adverse action in private, nongovernmental settings. However, plaintiff has not identified a statute or an alternate source at common law imposing that duty -a duty that could be enforceable against the co-defendants in the present circumstances through a damages remedy under Article 1802.[36] See, Prouty v. National R.R. Passenger Corp., 572 F.Supp. 200, 206 (D. D. C. 1983)(rejecting plaintiff's argument that defendant's failure to adequately maintain

---

[35] Dr. Garcia Gubern, as emergency medicine residency program director, made the initial decision to terminate plaintiff. See, Dr. Hevia's SUMF (Docket No. 80) ¶25, Docket No. 80-9, p. 1. Dr. Santiago, Dr. Colón, Dr. Soler, and Dr. Pérez presided the Ad Hoc Committee that upheld the dismissal. See, Dr. Hevia's SUMF (Docket No. 80) ¶ 28; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶ 28). Dr. Cruz, Dr. Valentín. Dr. Rivera-Pedrogo, Dr. Silva, and Dr. Laboy presided over the Graduate Medical Education Committee that confirmed the dismissal. See, Dr. Hevia's SUMF (Docket No. 80) ¶ 33; SCMF 3 (Docket No. 105), p. 1 (admitting to Dr. Hevia's SUMF ¶ 33). Dr. Alvarado, along with Dr. Cruz, notified plaintiff of the Committee's decision. See, Dr. Hevia's SUMF (Docket No. 80) ¶ 35; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶ 35).

[36] In Puerto Rico, common law means the Civil Code. Federal Deposit Insurance Corporation v. Arrillaga-Torrens, 212 F.Supp. 3d 312, 330-331 (D.P.R. 2016)(so recognizing).

employment records and have those records at its office in Washington D.D. constituted an independent tort for negligence, as plaintiff did not point to any violation of a duty imposed by statute or law); Nieves 952 F.Supp. at 65 (tort actions under Article 1802 are based on a violation of a right or an omission of a duty required by law).[37] If the source of that duty were a contract, plaintiff's claim may be more properly viewed as a breach -of-contract action to be measured against the requirements applicable to those actions. But supposing it were actionable as a tort, it would not support plaintiff's position.

On October 15, 2014, plaintiff received a letter from Dr. García Gubern informing him of his "immediate suspension (automatic) from the Emergency Medicine training program" (Docket No. 80-9, p. 1). He appealed the decision. See, Dr. Hevia's SUMF (Docket No. 80) ¶¶ 26-27; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶¶ 26-27). Even if he was unaware that this letter notified him of termination from the program, he was aware of his dismissal once he received Dr. García Gubern's second letter on November 10, 2014 –see, Dr. Hevia's SUMF (Docket No. 80) ¶ 30; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶ 30)– a decision plaintiff appealed to the General Medical Education Committee, which confirmed the dismissal. See, Dr. Hevia's SUMF (Docket No. 80) ¶ 32; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶ 32).

Once plaintiff received Dr. García Gubern's initial letter on October 15, 2014, he had reason to know of his precarious position in the residency program. After the Ad Hoc Committee

---

[37] Broadly speaking, where the alleged wrong springs from a breach of a general duty imposed by law, the claim is *ex delicto*. See, Ocasio-Juarbe v. Eastern Airlines, 902 F.2d 117, 119-121 (1st Cir. 1990) (reproducing in full official translation of Puerto Rico Supreme Court's response to certified questions discussing difference between actions sounding in tort and in contract). If it results from a breach of a promise, the claim is *ex contractu*. Id. In this sense, a tort requires the wrongful invasion of an interest protected by law, not an invasion of an interest created by the agreement of the parties.

ratified his dismissal, he participated in an appeal before the General Education Committee with full knowledge that he was appealing his termination. He cannot reasonably claim that his termination came as a surprise. There is no room to conclude the co-defendants breached a duty of care towards plaintiff. In consequence, the Article 1802 claims against them must be dismissed.

### B. Breach of Contract Claim

Plaintiff contends defendants are liable for breach of contract (Docket No. 10 p. 14).[38] Pursuant to Article 1206 of the Puerto Rico Civil Code, a contract exists from the moment one or more persons consent to bind himself or themselves, with regard to another or others, to give something or to render some service. See, P.R. Laws Ann. tit. 31 § 3371 (so stating). Article 1209 provides that contracts shall only be valid between the parties who execute them and their heirs, unless they contain a stipulation in favor of a third party, in which case that party may demand fulfillment as long as he has given notice of his acceptance to the person bound before it may be revoked. See, P.R. Laws Ann. tit. 31 § 3374 (so providing). By extension, actions for breach of contract require a contract, and a breach by one of contracting parties. See, Torres v. Bella Vista, 523 F.Supp. 2d 123, 153 (D.P.R. 2007)(discussing topic).

Plaintiff entered into a series of contracts with the Puerto Rico Department of Health to provide services as a resident at Hospital Episcopal San Lucas Ponce between 2012 and 2014. See, HESLI's SUMF (Docket No. 78) ¶2; Docket No. 78-2, p. 1. The parties named in the contracts are plaintiff and the Puerto Rico Department of Health. See, Docket No. 78-2; 78-3; 78-5. Plaintiff, however, argues that HESLI breached a contract in terminating him (Docket No. 99,

---

[38] While plaintiff raised this claim in the complaint against Dr. Hevia, did not address the issue in opposing summary judgment. Consequently, the breach of contract claim against Dr. Hevia was waived. Even if that were not so, as explained below, the lack of any contract between plaintiff and Dr. Hevia would require dismissal of a breach of contract claim against her.

p. 16).  But HESLI did not own or operate a hospital or a residency program.  See, HESLI's SUMF

¶¶ 18-20; Docket Nos. 78-8, pp. 10-11; 78-9. Plaintiff was not its resident.  Id.  And there is no

evidence of a contractual link between plaintiff and HESLI which would make HELSI liable for

breach of contract in this case.  See, Distribuidora Vicens v. Boriken Libros, 218 F.Supp.2d 106,

108 (D.P.R. 2006)(dismissing breach of contract claim under Puerto Rico law in absence of

contract between parties); Will-Drill Resources v. Samson Resources, 2005 WL 2429239, * 6,7

(W.D. La. Sept. 30, 2005)(rejecting breach of contract claim under Louisiana law by reference to

the Louisiana Civil Code as by definition, a breach of contract claim requires a contract, and given

that no contract existed between the parties, "none could be breached").[39]

Plaintiff argues the remaining defendants breached contractual obligations by failing to

give him notice of termination and deviating from the procedures detailed in the manual (Docket

No. 1, p. 22-23).  Yet none of these defendants had any contract with him.  See, Torres, 523

F.Supp.2d at 152-153 (no breach in absence of factual allegations that a contract existed between

the parties); United States v. Americ Incorporated, 416 F.Supp. 456, 460 (M.D. La. 1976)(applying

Louisiana law to dismiss breach of contract claim, for there was no contract, and therefore, nothing

for the party so sued to breach).  But accepting for the sake of argument the proposition that the

manual created a contract between plaintiff and these defendants –a proposition lacking legal and

factual support– plaintiff could not prevail as a matter of law.[40]

---

[39] The Louisiana Civil Code "shares a common parentage with the Puerto Rico Civil Code in that they are both derived from the Napoleonic Code."  Tokyo Marine and Fire Ins. Co., Ltd., 142 F.3d at 4 & n. 1.

[40] If the manual were deemed a contract with stipulations in plaintiff's favor, the action would have to be directed against the party that signed and bound itself to a contract, not against the individual defendants, who are not parties to any of the contracts referred to in this litigation.

First, plaintiff maintains that he was not given proper notice of his dismissal (Docket No. 1, p. 22-23). Yet, as already discussed, it is abundantly clear that he was on notice as to his termination through Dr. García Gubern's letter of November 10, 2014. <u>See</u>, Dr. Hevia's SUMF (Docket No. 80) ¶ 30; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶ 30). He knew he was appealing a dismissal when he went before the Graduate Medical Education Committee.

Second, plaintiff posits that co-defendants did not follow the process for termination outlined in the resident manual (Docket No. 106 p. 4). To repeat, however, the rules and regulations in the resident's manual describe the process for taking adverse action against a resident. They express that when the Graduate Medical Education Director, Program Director or member of the Teaching Staff identifies a reason for an adverse action against a resident, a written note must be sent to the Evaluation and Promotion Committee for evaluation and recommendation. <u>See</u>, Co-Defendants' SUMF (Docket No. 86) ¶ 15; Docket No. 86-5, p. 11.

In the event of a recommendation adverse to the resident, the Program Director informs the resident in writing, stating the decision, its reason, and the resident's right to appeal. <u>See</u>, Docket No. 86-5, p. 11. Should the resident appeal, the Program Director submits the appeal to the Evaluation and Promotion Committee or to an Ad-Hoc Committee, which may order a hearing. <u>See</u>, Docket No. 86-5, p. 11. Subsequently, the Committee submits a recommendation to the Program Director, who in turn prepares a report with the final decision and notifies the report to the resident and the General Medical Education Committee. <u>See</u>, Co-Defendants' SUMF (Docket No. 86) ¶¶ 16-17; Docket No. 86-5, p. 12.

The resident may appeal this decision to the Graduate Medical Education Committee by requesting a formal hearing, and after the hearing and an evaluation of the case, that Committee

submits its final decision to the resident and Program Director.  <u>See</u>, Co-Defendants' SUMF (Docket No. 86) ¶¶ 18-19; Docket No. 86-5, p 12.  In case a resident's professional behavior adversely affects the health or safety of the patients under his care or places anyone at a security risk, the Program Director can immediately suspend the resident.  <u>See</u>, Co-Defendants' SUMF (Docket No. 86) ¶ 20; Docket No. 86-5, p. 12.  Automatic dismissal is justified in response to misconduct, examples of which include disorderly conduct, harassment of other employees, use of abusive language on the premises (hospital or affiliated sites), fighting, threatening, attempting or causing injury to another person on the premises.  <u>See</u>, Docket No. 86-5, pp. 10-11.  In case of immediate suspension, the resident is entitled to due process.  <u>See</u>, Docket No. 86-5, p. 12.

Dr. García Gubern received Dr. López' report, and sought and accepted a recommendation from the Clinical Competency Committee.  <u>See</u>, Dr. Hevia's SUMF (Docket No. 80) ¶ 25; Docket No. 80-9, p. 1.  He notified plaintiff of his decision to terminate him from the residency program and of his right to appeal.  <u>See</u>, Docket No. 80-9, p. 1.  Plaintiff appealed to an Ad Hoc Committee, which after a hearing, upheld Dr. García Gubern's decision and notified plaintiff of the ruling. <u>See</u>, Dr. Hevia's SUMF (Docket No. 80) ¶¶ 26-27; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶¶ 26-27); Co-Defendants' SUMF (Docket No. 86) ¶¶ 65-66; 68.  Plaintiff appealed the decision to the Graduate Medical Education Committee.  <u>See</u>, Dr. Hevia's SUMF (Docket No. 80) ¶ 32; SCMF 3 (Docket No. 105), p. 1 (admitting Dr. Hevia's SUMF ¶ 32). Following a hearing, the Committee affirmed plaintiff's automatic dismissal, notifying him of the decision.  <u>See</u>, Dr. Hevia's SUMF (Docket No. 80) ¶ 35; SCMF 3 (Docket No. 105), p. 1 (admitting

Dr. Hevia's SUMF ¶ 35). In this way, the co-defendants followed the established termination procedure.[41]

Plaintiff alleges defendants acted without just cause in terminating the contract before its 2015 expiration date (Docket No. 99, pp. 2, 19). The claim, however, must be directed at the contracting party subject to the alleged just cause requirement, not at the defendants in this case.[42] Yet if the action could be maintained, plaintiff would not prevail. The rules and regulations identify misconduct as ground for dismissal, setting forth as examples of misconduct, disorderly, harassing behavior, and abusive language (Docket No. 86-5, p. 10), the categories the decisionmakers used to describe plaintiff's threatening comments against his superior, the chief resident. Those comments were reprehensible. More so here, as they were made by a physician in training on a medical residency program. The resulting termination was legitimate and reasonable, not whimsical, arbitrary or capricious. See, Hart v. New York University Hospitals Center, 2011 WL 4755368, * 8 (S.D.N.Y. Oct. 7, 2011)(verbal threats/abusive language on

---

[41] Plaintiff argues or suggests he was improperly dismissed when suspended on October 15, 2014 without receiving 30-day prior notice in violation of the rules and regulations (Docket No. 1, p. 12). The argument lacks merit, as the rules provided for immediate dismissal without warning in instances of disorderly conduct, harassment and abusive language, the rubric under which the decisionmakers placed the comments plaintiff made about the chief resident. See, Docket No. 83-5, p. 10 (Automatic dismissal from the program …").

[42] By virtue of Article 1476 of the Puerto Rico Civil Code, field hands, mechanics, artisans and other salaried laborers hired for a certain time or for a certain work cannot be dismissed without just cause before the contract is completed. See, P.R. Laws Ann. tit. 31 § 4114 (so providing). Dismissal without just cause prior to conclusion of the contract gives rise to an action to recover damages for breach of contract. See, Cassasús v. Escambrón, 86 P.R.R. 356 (1962)(recognizing action). But the Article only applies to manual-labor employees. See, Camacho Arroyo v. Estado Libre Asociado, 131 D.P.R. 718, 726-727 (1992), P.R. Offic. Trans. (so holding, noting that Article 1476 does not apply to liberal professions)(quoting Q.M. Scaevola, Código Civil, Madrid, Ed. Reus, 1951, T. XXIV, Vol. 2, p. 22). Alternate provisions may apply to other term contracts. See, López Fantauzzi v. 100 % Natural, 181 D.P.R. 92, 107-112 ( (2011)(addressing issue). To this end, *ex-contractu* actions have been recognized in cases of dismissal of term employees excluded from the coverage of Article 1476, for alleged violation of fixed-term agreements. See, Mattei v. Vélez, 145 D.P.R. 508 (1998), P.R. Off. Trans. (discussing action based on early contract termination but dismissing it, as plaintiff's employment terminated for a cause contemplated in the contracting defendant's regulations). For a comprehensive discussion of this topic, see, Jorge L. Capó-Matos, in M.J. Caterine, Employment at Will: A State-by-State Survey-Puerto Rico Chapter (2011), pp. 896-898 (BNA Books, Arlington, VA. 2011).

supervisors legitimate reason for termination); Bryan v. Averitt Express, 2009 WL 10666353, *

11 (N.D.Ga. June 8, 2009)(similar with respect to abusive language), *aff'd* 375 Fed.Appx. 942

(11th Cir.), *cert. denied* 562 U.S. 883 (2010); Dose v. Buena Vista, 229 F.Supp.2d 910, 915-916,

926 (N.D. Iowa 2002)(acknowledging plaintiff's threat to supervisor as legitimate reason for

termination)(citing in part Phillips v. Union Pac. R.R., 216 F.3d 703, 706 (8th Cir. 2000)

(threatening a coworker with bodily harm legitimate reason for terminating employee)).   It was

predicated on just cause.

Plaintiff describes previous instances of disciplinary actions co-defendants took against

him (Docket No. 106, p. 24-32).   He states these events are related to his termination from the

residency program and provide proof that co-defendants violated the policies outlined in the

manual (Docket No. 106, p. 35).   Be that as it may, the uncontested facts show that plaintiff was

terminated because of what the decisionmakers characterized as "disorderly, harassing behavior

and abusive language" –see, Dr. Hevia's SUMF (Docket No. 80) ¶ 25; Docket No. 80-9, p.1)–

based on undisputed evidence that plaintiff, a resident in training, stated that he would have

punched Dr. Hevia –the chief resident– had she been a man.   See, Dr. Hevia's SUMF (Docket No.

80) ¶ 13; Docket No. 80-1, pp. 16-17.   Past disciplinary actions are irrelevant to this case and

disregarded.   Because there is no genuine dispute of material fact as to whether plaintiff was given

proper notice of his dismissal or that co-defendants followed the termination procedures outlined

in the manual and claims of previous disciplinary actions are not material to this case, plaintiff's

breach of contract claim against the co-defendants must be dismissed.

### C.  Due Process

In the complaint, plaintiff invokes violation of constitutional due process under the Fifth

and Fourteenth Amendment of the U.S. Constitution (Docket No. 1, p. 19).   In his opposition to

summary judgment, he clarifies he "is not claiming the due process clause of the U.S. Constitution," but rather a contractual breach of due process owed under the residents' manual (Docket No. 99, p.7; Docket No. 104, p. 14; Docket No. 106, p. 15).[43]  To the extent such a claim is viable against defendants in the context of the present litigation, it is unavailing.  As argued, it is conflated with the contractual arguments discussed and disposed of above and in any event, falls on its own.

The essence of due process is prior notice and an opportunity to be heard.  See, Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972)(articulating principle).  It does not demand every procedural protection that might help a claimant but only that people have a basically fair opportunity to convince the decision maker by presenting proofs and arguments and evidence and replies to the arguments of others.   See, Newman v. Burgin, 930 F.2d 955, 961 (1st Cir. 1991)(applying formulation).  Moreover, it does not require that specific set of detailed procedures be followed as long as the procedures actually followed are basically fair ones.  Id. at 960 (so recognizing).  And in this case, they were.  As demonstrated earlier, the decisionmakers gave plaintiff notice of their recommendations and decisions, providing him with ample opportunity to respond, at various levels.  In the end, plaintiff was given all process he was due.  See, Hason v. University of California Bd. of Regents, 35 Fed. Appx. 340, 341 (9th Cir. 2002)(affirming

---

[43] There are no cognizable constitutional claims in the absence of state action, and the record does not show state action.  That plaintiff provided services as a resident in Hospital Episcopal San Lucas Ponce through a contract between him and the Puerto Rico Department of Health, with the Department of Health paying for plaintiff's services, does not translate into a finding that a state actor participated in the actions challenged in this case.  See, Jones v. Hawaii Residency Program, 2007 WL 9710959, ** 4-6 (D. Hawai'i November 30, 2007)(dismissing constitutional due process claim against individual doctors for lack of state action given that doctors acted as program directors and faculty members of residency program from which plaintiff was dismissed, and albeit the University of Hawaii sponsored the residency program, the program was not a state actor); Sánchez v. United States, 2005 WL 3068782, **1-2, 5-6 (W.D. Tex. Nov. 10, 2005)(federal government not liable for damages allegedly caused by resident physicians' malpractice, for while the residents were active duty members of the Air Force, which paid their salaries, the physicians were assigned to a residency training program at the University Hospital of the University of Texas System, which as supervising institution, was responsible for the residents' work).

dismissal of action predicated on wrongful termination from a medical residency program at Veteran's Administration Medical Center in part because Center provided plaintiff all the process he was due in connection with its decision not to renew his medical residency)(citing Stretten v. Wadsworth, 537 F.2d 361, 369 (9th Cir. 1976)(holding that due process was satisfied where terminated medical resident was provided notice of deficiencies underlying dismissal, an opportunity to examine the evidence against him, and opportunity to present his side of the story)).

## III.    CONCLUSION

There is no genuine dispute respecting material facts.  Plaintiff failed to substantiate viable tort and contract claims entitling him to prevail.  He was given all process he was due.  In view of the foregoing, HESLI's motion for summary judgment (Docket No. 77), Dr. Yorlenis' Hevia's motion for summary judgment (Docket No. 79), and co-defendants' motion for summary judgment (Docket N0. 85) were GRANTED.  Therefore, the complaint is hereby DISMISSED.  Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of January, 2019.

s/Pedro A. Delgado Hernández
PEDRO A. DELGADO HERNÁNDEZ
United States District Judge